UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ENVER RODRIGUEZ,

     Plaintiff,

v.                                    CASE No. 8:11-CV-1928-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

---

### O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.* Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, the decision will be affirmed.

I.

The plaintiff, who was fifty-four years old at the time his insured status expired and who has an associate's degree, has worked as a meat department associate, U.S. Customs and Border Protection Agriculture

---

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 12).

Specialist, and U.S. Department of Agriculture Animal, Plant, and Health Inspector (Tr. 103-04, 191, 249). He filed a claim for Social Security disability benefits, alleging he became disabled due to cervical and lumbar spine impairments (Tr. 230). His claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that, through his date last insured of March 31, 2010, the plaintiff had severe impairments of degenerative disc disease of the lumbar/cervical areas of the spine (Tr. 26). He concluded that the plaintiff had the following residual functional capacity (Tr. 28):

> Beginning February 2, 2005, through the date last insured, the claimant retained the ability to: lift and/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; and push/pull with arm controls (as shown for lift/carry) was unlimited. He required the ability to alternate sitting and standing in forty-five minute increments. All exposure to unprotected heights, balancing, or driving was precluded. The claimant

had no manipulative, visual, communicative, or environmental limitations.

The law judge decided that these limitations prevented the plaintiff from returning to his past relevant work (Tr. 34). However, based upon the testimony of a vocational expert, the law judge found that there were jobs that existed in significant numbers in the national economy that the plaintiff could have performed, such as electronic worker, small product assembly, and injection molding tender (Tr. 34-35). The law judge therefore ruled that the plaintiff was not disabled (Tr. 35-36).

The plaintiff requested review of the law judge's decision (Tr. 18). The Appeals Council granted the plaintiff's request for review, and it generally adopted the law judge's findings (Tr. 4-5). However, the Appeals Council noted that the law judge did not address the opinion of Dr. Miguel Attias. Accordingly, it evaluated that opinion and concluded that this "opinion is not entitled to controlling weight because it is inconsistent with objective medical findings, the treatment record, and the claimant's daily activities" (Tr. 5). The Appeals Council therefore found that the plaintiff was

not disabled (Tr. 6).  The decision of the Appeals Council is the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).  In this case, the plaintiff must show that he became disabled before his insured status expired on March 31, 2010, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971), <u>quoting</u> <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004)(<u>en banc</u>), <u>cert.</u> <u>denied</u>, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the Commissioner's decision on two grounds. First, the plaintiff contends that the law judge and the Appeals Council failed properly to weigh certain medical opinions of record. The plaintiff also asserts that the law judge failed properly to evaluate his credibility. Neither of these contentions warrants reversal.

The plaintiff argues that the opinions of Dr. Miguel Attias and Dr. Donald Goldman were erroneously rejected by the Commissioner (Doc. 13, pp. 13-20). This argument is unpersuasive.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. <u>Phillips</u> v. <u>Barnhart</u>, 357 F.3d 1232, 1240 (11th Cir. 2004). However, this principle does not apply here because neither Dr. Attias nor Dr. Goldman are properly considered treating physicians. Moreover, even if they

-6-

were, good cause exists for discounting a treating physician's opinion when it is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

As indicated, the law judge in rendering his decision overlooked the Multiple Impairment Questionnaire from Dr. Attias.  The Appeals Council corrected this error.  Thus, it adopted the law judge's findings and made the additional finding that Dr. Attias's opinion was entitled to little weight (Tr. 5).

On January 28, 2010, Dr. Attias completed the form entitled "Multiple Impairment Questionnaire" (Tr. 650-57).  In response to a question regarding the plaintiff's ability to sit, stand, walk, lift, and carry, Dr. Attias noted "FCE [Functional Capacity Evaluation] completed 1/12/10. Information taken from this document" (Tr. 652). Dr. Attias opined that, in an eight-hour day, the plaintiff could sit for one to two hours, stand/walk for one to two hours, and lift/carry up to twenty pounds frequently and fifty pounds occasionally (Tr. 652-53).  Dr. Attias stated that the plaintiff would need to get up and move around every one to two hours (Tr. 652).

The Appeals Council found that the opinion of Dr. Attias was

entitled to little weight (Tr. 5). Specifically, it explained (id.):

> The Appeals Council notes that the hearing
> decision did not address the January 28, 2010
> Multiple Impairment Questionnaire from the
> claimant's treating medical source, Miguel Attios
> [sic], M.D., in Exhibit 25F. Dr. Attios [sic] stated
> that in an 8-hour day the claimant could sit for 1-2
> hours; stand/walk for 1-2 hours with the need to
> get up and move around every 1-2 hours; lift up to
> 20 pounds frequently, 20-50 pounds occasionally,
> etc (Exhibit 25F). Social Security Rulings 96-2p
> and 96-5p provides that the medical opinion of a
> treating source is entitled to controlling weight if it
> is well supported by objective medical evidence, it
> is consistent with other substantial evidence in the
> record, and it is not on an issue reserved to the
> [C]ommissioner. The Appeals Council finds that
> Dr. Attios' [sic] opinion is not entitled to
> controlling weight because it is inconsistent with
> objective medical findings, the treatment record,
> and the claimant's daily activities.

This explanation is sufficient to discount Dr. Attias's opinion.

Moreover, there are other reasons why the opinion could reasonably be

discounted.

In the first place, it does not appear that Dr. Attias is entitled to

the weight normally accorded opinions of treating physicians since he did not

have a continuing relationship with the plaintiff. As the Commissioner points out (Doc. 14, p. 11), Dr. Attias at most only saw the plaintiff on one occasion. In fact, it is not even clear that on that occasion the plaintiff actually saw Dr. Attias, as opposed to his ARNP (Tr. 649). In all events, Dr. Attias's opinion does not deserve the weight typically given to opinions of treating doctors. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).

Furthermore, Dr. Attias's opinion is generally consistent with the law judge's finding of the plaintiff's residual functional capacity with the exception of the limitations of sitting to one to two hours in an eight-hour workday and of standing/walking to one to two hours in an eight-hour workday (Tr. 652). The opinion regarding these limitations is plainly not credible. To start with, it is unreasonable to conclude that someone with back and neck problems could not sit or stand/walk for more than one to two hours each, but could lift and carry fifty pounds occasionally and twenty pounds frequently. Even more significantly, Dr. Attias indicated that he based his opinion on the functional capacity evaluation of January 12, 2010 (id.). That evaluation concluded that the plaintiff could perform medium exertional level work (Tr. 687-88). This conclusion means that the plaintiff could sit and

-9-

stand/walk for at least six hours each in an eight-hour workday and could lift and carry up to fifty pounds. Clearly, the functional capacity evaluation that Dr. Attias purports to rely upon contradicts his opinion regarding the plaintiff's limitations of sitting and standing/walking.

These circumstances provide additional support for the Appeals Council's determination to give little weight to Dr. Attias's opinion regarding sitting or standing/walking because it is inconsistent with objective medical findings, the treatment record, and the claimant's daily activities. The plaintiff complains that the Appeals Council failed to specify the findings and activities that were inconsistent with Dr. Attias's opinions regarding sitting or standing/walking. This argument is unpersuasive.

The Appeals Council did not seem to suggest that there were specific findings that contradicted Dr. Attias's opinion, but rather it was indicating that overall the objective medical findings (see, e.g., Tr. 643) did not support the extreme limitations opined by Dr. Attias. Similarly, the treatment plan was generally conservative and did not include major surgery, thereby indicating that the plaintiff was not extremely limited due to back and neck pain. Moreover, the daily activities discussed by the law judge and

adopted by the Appeals Council were inconsistent with limitations of sitting and standing/walking to two hours each (see Tr. 31-32).

For these reasons, the Appeals Council's determination to give little weight to Dr. Attias's opinion is reasonable and amply supported by the evidence.

The plaintiff also challenges the law judge's determination that the opinion of Dr. Goldman was not persuasive (Doc. 13, p. 17). In August 2010, Dr. Goldman stated that the plaintiff's diagnosis included: (1) failed back lumbar spinal surgical syndrome with recurrent disc herniations; (2) lumbar derangement and radiculopathy; (3) lumbar spinal stenosis; (4) cervical disc herniations multiple levels causing cervical cord pressure; (5) cervical derangement and neural foraminal stenosis; and (6) cervical derangement and radiculopathy (Tr. 722). Dr. Goldman then opined that the plaintiff "is permanently disabled from any type of employment and should receive Social Security Disability" (Tr. 723). He also completed a "Spinal Impairment Questionnaire," wherein he stated that, in an eight-hour workday, the plaintiff could sit for three to four hours with breaks every twenty to thirty minutes, stand/walk for one to two hours, and lift/carry up to ten pounds

-11-

occasionally (Tr. 727-28). Finally, Dr. Goldman reported that the plaintiff should avoid pushing, pulling, kneeling, bending, stooping, heights, temperature extremes, balancing, running, jumping, and climbing (Tr. 730).

With respect to Dr. Goldman, the law judge stated (Tr. 32-33):

> Donald I. Goldman, M.D.[,] proffered a Spinal Impairment Questionnaire as well as a narrative report at the request of the claimant's attorney representative. The undersigned recognizes that Dr. Goldman has provided a medical opinion that the claimant is "disabled" or "unable to work," and imposed restrictions that effectively result in a finding of incapacitation for Social Security purposes. However, section 404.1527 of Regulations No. 4 provides that the medical findings and other evidence must be considered in order to determine if, and to what extent, such opinion is supported thereby. The undersigned, on behalf of the Commissioner of Social Security, is the ultimate arbiter of work capacity for Social Security purposes, in view of specific definitions used therein. That is, the determination of "disability" is reserved to the Commissioner, delegated to the undersigned, on the basis of the record as a whole. It is emphasized that the claimant underwent the examination that formed the basis of Dr. Goldman's opinions specifically for the purpose of evidence generation for his disability claim. Dr. Goldman is not and has never been one of the claimant's treating physicians; thus, Dr. Goldman only examined the claimant once, affording him a one-time snapshot of the

claimant's impairments rather than the more comprehensive analysis attained from a longstanding treatment relationship. Moreover, it is overwhelmingly evident that Dr. Goldman relied quite heavily upon the claimant's own subjective complaints of pain and limitation. Ultimately, the undersigned has not found the opinions of Dr. Goldman's to be persuasive. (Exhibit(s) 28F and 29F)

As indicated with respect to Dr. Attias, Dr. Goldman's opinion is not entitled to the weight ordinarily given to a doctor who has treated a claimant with some regularity over an extended period and who therefore has a "detailed, longitudinal picture of [the plaintiff's] medical impairment(s)." 20 C.F.R. 404.1527(c)(2). In fact, since Dr. Goldman saw the plaintiff only once, his opinion is not entitled to the weight normally accorded the opinion of a treating physician. See also Milner v. Barnhart, 275 Fed. Appx. 947 (11th Cir. 2008).

The plaintiff challenges the law judge's conclusion that Dr. Goldman's opinion relied quite heavily on the plaintiff's subjective complaints (Doc. 13, pp. 17-18). This, however, was a reasonable inference for the law judge to draw since, as indicated, the objective medical findings did not justify the extreme limitations opined by Dr. Goldman, such as that

the plaintiff could not sit more than twenty-five to thirty minutes at a time (Tr. 722, 727). The law judge's own observations demonstrated that this opinion was not true (Tr. 31). Further, the inference that Dr. Goldman relied quite heavily on the plaintiff's subjective complaints is strengthened by the opinion that the plaintiff's symptoms and limitations applied from February 2005 (Tr. 730), since that was more than five and one-half years before Dr. Goldman examined the plaintiff.

The plaintiff also seems to contend that the law judge improperly rejected Dr. Goldman's opinion because it was generated at the request of the plaintiff's counsel (Doc. 13, p. 18). However, as indicated by the foregoing quotation, the law judge did not reject Dr. Goldman's opinion on this basis. Rather, the law judge simply pointed out that the plaintiff was sent to Dr. Goldman for evidentiary purposes, and not for treatment. This circumstance is significant since it means that Dr. Goldman does not occupy the status of treating doctor. Nevertheless, it is appropriate to add that it would have been reasonable for the law judge to be skeptical of Dr. Goldman's opinions in light of his selection by plaintiff's counsel. It would be naive to think that plaintiff's counsel did not have some idea of Dr. Goldman's tendencies when

-14-

selecting an orthopedic surgeon whose headquarters are in Baldwin, New York, particularly since the record already contained the opinions of Dr. Attias from just a few months earlier.

Moreover, the law judge was authorized to reject Dr. Goldman's conclusory opinion that the plaintiff was disabled and should receive Social Security disability benefits (Tr. 723). The issue of whether a claimant is disabled is reserved to the Commissioner under the regulations. 20 C.F.R. 404.1527(d); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007).

For these reasons, the Commissioner's final decision adequately justified discounting the opinions of Dr. Attias and Dr. Goldman. In his memorandum, the Commissioner points to additional circumstances that support this determination (Doc. 14, pp. 15-16).

The plaintiff also tries to make an argument based upon the opinion of nonexamining reviewing physician, Dr. P.S. Krishnamurthy. The law judge found that opinion to be not "totally persuasive" because the physician did not have the opportunity to examine the plaintiff or to review the medical evidence received after his assessment (Tr. 33). The Appeals

Council simply said that it accepted that assessment as stated in the law judge's decision (Tr. 5). That comment does not constitute error, and it certainly does not amount to reversible error.

Finally, the plaintiff asserts that the law judge's conclusion that "[the plaintiff] could perform a range of light exertional work based on unspecified evidence in the record is simply the ALJ's lay assessment of the raw medical data. This is strictly disallowed" (Doc. 13, pp. 19-20). This argument is baseless.

The law judge (along with the Appeals Council) was acting in his assigned responsibility of administrative fact-finder. It was his duty to evaluate the evidence in the record, including medical opinions. That is exactly what he did. Moreover, as his decision clearly indicates, the law judge did not base his decision on "unspecified evidence."

As a second issue, the plaintiff asserts that the law judge failed to evaluate properly his credibility (Doc. 13, pp. 20-23). This contention lacks merit.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and referred to the pertinent regulations and Social Security rulings (Tr. 28). He even cited Landry v. Heckler (id.). This demonstrates

that the law judge employed the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

Moreover, the law judge did not wholly discount the plaintiff's complaints of pain. The law judge discussed the plaintiff's testimony in his decision, and he specifically noted the plaintiff's subjective complaints (Tr. 29). After considering the plaintiff's testimony, along with the objective medical evidence, the law judge restricted the plaintiff to a limited range of light work (Tr. 28). In particular, the law judge allowed the plaintiff to "alternate sitting and standing in forty-five minute increments" (id.). Accordingly, the law judge only rejected the plaintiff's allegations of total disability.

In his credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's complaints of pain. Specifically, the law judge stated that "[t]he severity of the claimant's allegations of pain and limitation is not consistent with objective clinical findings of record" (Tr. 30). He then discussed in detail the evidence that supported that finding (Tr. 30-31).

The law judge stated further (Tr. 31-32):

-18-

The undersigned has found it reasonable to conclude that the claimant's allegations of an inability to sustain regular and continuing work secondary to pain and limitations do not find full support in the medical evidence of record or in his testimony. More to the point, the claimant's testimony casts significant doubt upon the true extent of his limitations and his credibility. For example, on October 23, 2007, when questioned about the pain medication he was seeking, the claimant reported that the medications he sought were for his father-in-law in Columbia who had colon cancer. As a result, medication management was strongly advised. (Exhibit 8F, Pg. 10) On January 31, 2008, muscle strength was noted as 5/5 and spinal tenderness to digital palpation was reported in the neck and lumbar area of the spine; however, the claimant declined medical procedures for pain as he had a job interview in Pensacola, Florida, which is approximately a seven-hour drive from the claimant's home area. Given the magnitude of the claimant's alleged pain and discomfort, this was quite an undertaking for the claimant, as it would require him to sit for an extended period of time with little opportunity for lying down. During numerous visits, he reports the pain level as no more than two (on the scale of one to ten, with ten as the most severe pain) and even when reporting pain on a level of five or higher, he is routinely described as "in no acute distress." Moreover, the records from Tampa Pain Relief indicated that the claimant reported no more than moderate pain and denied sleep disturbance as a result of pain. (Exhibit 12F) Although the claimant testified that the facet joint injections

provided minimal relief lasting no more than 72 hours or approximately three days after the injection, he continued to undergo the injections. It would seem reasonable to conclude that if the relief he received were truly as temporary as alleged, he would have stopped taking the injections.   The claimant testified that he has approximately 10-12 days a month when the medications are ineffective and the level of pain keeps him from enjoying activities with his family. Of significant import though, he reported to Dr. [Chadi] Yaacoub no medication side effects and that the medications were working and allowing him to continue activities of daily living.  (Exhibit 20F)

. . .

Despite the allegations of symptoms and limitations that prevented all work activity, the record reflects that on August 12, 2009, the claimant reported to Abraham Riveria[sic], M.D. [] that he was traveling to New York in a few days. (Exhibit 22F) Although traveling and a disability are not necessarily mutually exclusive, the claimant's decision to travel tends to suggest that the alleged symptoms and limitations may have been overstated. Whether the claimant traveled by car or by plane, such an endeavor would have certainly required more exertion than the claimant admitted during the hearing.    In fact, it is reasonable to conclude from the claimant's ability to travel far distances that his daily activities have, [sic] been somewhat greater than he has acknowledged.   Moreover, on the day of the hearing the claimant ... remained seated during an

approximately 40-minute hearing without
significant difficulty observed from a lay
perspective.   The claimant used no assistive
devices and his gait appeared to be normal.
Posture and motor behavior were normal and eye
contact was appropriate.

. . .

Lastly, the undersigned notes that the medical
records from 2006 indicate that the claimant
weighed 165 pounds and he testified that he now
weighs 161 pounds. The medical record indicates
that he rarely reported any appetite changes and as
reported during the hearing, he no longer goes for
walks or to the movies. It would seem reasonable
to conclude that an individual as disabled as the
claimant alleges and who has no form of exercise
to speak of and no change in appetite, that there
would have been some weight gain due to the
complete lack of exercise and/or daily activities
that normally allows an individual to burn calories
during the day.   In sum, the claimant has
exaggerated his symptoms and restrictions as these
are not shown to be supported by the medical signs
and laboratory/diagnostic findings to the level of
disability alleged. The undersigned acknowledges
that the inconsistent statements may not be the
result of a conscious intention to mislead;
nevertheless, the inconsistencies suggest that a
great deal of the information provided by the
claimant may not be reliable, and thereby
significantly compromises his credibility in this
case.

This lengthy explanation is more than adequate to discount the plaintiff's complaints of disabling pain.   See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

The plaintiff, in a cursory manner, contends that his activities of daily living do not undermine his credibility (Doc. 13, p. 22). However, the law judge is clearly authorized to consider those activities in making his credibility determination. See, e.g., Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984). Indeed, the regulations specify that activities of daily living will be taken into account in making a credibility determination. 20 C.F.R. 404.1529(c)(3)(i).

The plaintiff's argument that the law judge engaged in "sit and squirm" jurisprudence is also meritless. The law judge is not prohibited "from considering the claimant's appearance and demeanor during the hearing," as long as he does "not reject the objective medical evidence and claimant's testimony solely upon his observation during the hearing." Norris v. Heckler, 760 F.2d 1154, 1158 (11th Cir.1985). Here, the law judge's observations were properly considered in his credibility determination.

Finally, the plaintiff argues that his work history supports his credibility (Doc. 13, p. 23). Significantly, the law judge considered the plaintiff's work history, and his questions to the vocational expert accounted for the plaintiff's prior work activity (Tr. 34, 123-26). In any event, the law judge, as indicated by the lengthy quotation, had ample basis for concluding that the plaintiff was not entirely credible.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 23rd day of August, 2012.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE